[No. B156171. Second Dist., Div. Five. May 16, 2003.]

STEPHEN M. GAGGERO, Plaintiff and Appellant, v.
ANNA MARIE YURA, Defendant and Respondent.

■■■■■■■■■
■■■■■■■■■■■

**COUNSEL**

Davis Wright Tremaine, Gary L. Bostwick, Rochelle L. Wilcox; Law Offices of David Blake Chatfield and David Blake Chatfield for Plaintiff and Appellant.

O'Neill, Lysaght & Sun and David E. Rosen for Defendant and Respondent.

**OPINION**

**MOSK, J.**—Defendant and respondent Anna Marie Yura (Yura) obtained a summary judgment against plaintiff and appellant Stephen M. Gaggero (Gaggero). Gaggero alleged that Yura breached the implied covenant of good faith and fair dealing by refusing to close a real property sales transaction. Gaggero requested, inter alia, specific performance of the real estate sales contract. The trial court held that as a matter of law Gaggero did not fulfill the requirement of being ready, willing and able to purchase the property. Seeking reversal of the summary judgment, Gaggero contends that he raised a triable issue of material fact and further argues that the trial court erred in denying his motion for reconsideration. We hold that Yura did not meet her threshold burden on summary judgment with respect to the issue of Gaggero's financial ability to purchase the property, and that Gaggero raised triable issues of material fact concerning his intent to purchase the property and the existence of an agreement to conditions, covenants, and restrictions to be placed on the property. We therefore reverse the summary judgment.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Frederick Harris (Harris), through a trust of which he was trustee, owned three adjacent parcels of real estate in Santa Monica, California: 938 Pacific Coast Highway (the 938 property), 940 Pacific Coast Highway (the 940 property), and 944 Pacific Coast Highway (the 944 property). Gaggero and Harris entered into negotiations for Gaggero to purchase the 938 property and to obtain a right of first refusal to purchase the 940 and 944 properties.

In August 1998, Gaggero's stepsister Stephanie Ray Boren (Boren) and Harris executed a purchase and sale agreement (the Purchase Agreement) by

---

[1]We state the evidence supplied by appellant in accord with the summary judgment standard of review, which standard we discuss *post*.

which the parties agreed that Boren or her assignee would purchase the 938 property. Among its terms, the Purchase Agreement provided that as a condition of closing escrow, the buyer and seller would agree to identical covenants, conditions and restrictions (CC&R's) to be recorded against all three properties. The parties also entered into a right of first refusal agreement with respect to the 940 and 944 properties—an agreement that provided that the rights of first refusal would not become effective until the close of escrow on the 938 property.

Over the next several years, Gaggero and Harris negotiated the CC&R's. Escrow did not close on the 938 property, and in May 2000 Harris died. Yura succeeded Harris as trustee of the Harris trust and refused to proceed with the sale of the 938 property. Gaggero, as Boren's assignee, filed suit against Yura, seeking specific performance of the Purchase Agreement and the right of first refusal agreement. Gaggero also requested a declaratory judgment that he was entitled to have the CC&R's he claimed he and Harris had agreed upon recorded on the properties, to have escrow close on the 938 property, and to enforce the rights of first refusal on the 940 and 944 properties. In addition, Gaggero sought damages for breach of the implied covenant of good faith and fair dealing.

Yura moved the trial court for summary judgment on the grounds that Gaggero did not, and could not, establish that he was ready, willing, and able to perform under the Purchase Agreement and that Gaggero's claims were barred by the statute of frauds. The trial court granted summary judgment on the ground that Gaggero could not establish his readiness, willingness, and ability to perform his obligations under the Purchase Agreement. Gaggero moved for reconsideration of the ruling, but the motion was denied. Judgment was entered in Yura's favor. This appeal followed.

## DISCUSSION

### I. *Standard of Review*

Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ In reviewing an order granting summary judgment, the appellate court independently determines whether, as a matter of law, the motion for summary judgment should have been granted. ■ "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).)

A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).)[2] ■ In order to obtain a summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . . Although he remains free to do so, the defendant need not himself conclusively negate any such element . . . ." (*Aguilar, supra,* 25 Cal.4th at p. 853.) "The defendant has shown that the plaintiff cannot establish at least one element of the cause of action by showing that the plaintiff does not possess, and cannot reasonably obtain, needed evidence: The defendant must show that the plaintiff *does not possess* needed evidence, because otherwise the plaintiff might be able to establish the elements of the cause of action; the defendant must also show that the plaintiff *cannot reasonably obtain* needed evidence, because the plaintiff must be allowed a reasonable opportunity to oppose the motion. (Code Civ. Proc., § 437c, subd. (h).)" (*Id.* at p. 854, fn. omitted.)

Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar, supra,* 25 Cal.4th at p. 849; Code Civ. Proc., § 437c, subd. (p)(2).) If the plaintiff does not make this showing, summary judgment in favor of the defendant is appropriate. If the plaintiff makes such a showing, summary judgment should be denied.

II. *Yura failed to provide evidence that Gaggero could not establish the element of financial ability to perform under the Purchase Agreement.*

"Summary judgment law in this state . . . continues to require a defendant moving for summary judgment to present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence. In this particular at least, it still diverges from federal law. For the defendant *must* 'support[]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' (Code Civ. Proc., § 437c, subd. (b).) The defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. The defendant

---

[2]Code of Civil Procedure section 437c, subdivision (p)(2) was formerly numbered subdivision (*o*)(2). This subdivision was renumbered but not substantively altered by Statutes 2002, chapter 448, section 5.

may also present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing. But, as *Fairbank v. Wunderman Cato Johnson* (9th Cir. 2000) 212 F.3d 528 concludes, the defendant *must* indeed present evidence[]: Whereas, under federal law, 'pointing out through argument' (*id.* at p. 532) may be sufficient . . . , under state law, it is not." (*Aguilar, supra,* 25 Cal.4th at pp. 854-855, fns. omitted.)

 Yura, in her separate statement of undisputed facts—which, in combination with Gaggero's responsive separate statement and the supporting evidence provided by the parties, in this case constitutes the entire factual universe we review in connection with a summary judgment (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 112 [113 Cal.Rptr.2d 90])—attempts to establish that Gaggero cannot prove the element of financial readiness to perform under the Purchase Agreement. Past and present ability to perform under the Purchase Agreement is a requirement for specific performance and for breach of contract, the foundations of Gaggero's complaint. (*C. Robert Nattress & Associates v. CIDCO* (1986) 184 Cal.App.3d 55, 64 [229 Cal.Rptr. 33] ["[T]o obtain specific performance, a buyer must prove not only that he was ready, willing and able to perform at the time the contract was entered into but that he continued ready, willing and able to perform at the time suit was filed and during prosecution of the specific performance action"]; *Am-Cal Investment Co. v. Sharlyn Estates, Inc.* (1967) 255 Cal.App.2d 526, 539 [63 Cal.Rptr. 518] ["A buyer seeking specific performance of a contract for the sale of realty has the burden of both pleading and proving that he was ready, willing and able to perform the contract"]; *Ersa Grae Corp. v. Fluor Corp.* (1991) 1 Cal.App.4th 613, 624-625 [2 Cal.Rptr.2d 288] [element of contract breach is that the plaintiff was ready, willing, and able to perform under the contract].)

Yura's separate statement contains the following pertinent allegations of fact: "Gaggero has failed to proffer evidence that (1) he was ready, willing and able to perform under the Residential Purchase Agreement at the time the contract was entered into, and (2) he continued ready, willing and able to perform at the time this suit was filed and during prosecution of this action," and "At deposition, Gaggero refused to answer any questions concerning how he intends to pay for the 938 property." Under *Aguilar, supra,* 25 Cal.4th 826, and Code of Civil Procedure section 437c, this factual showing is insufficient to meet Yura's burden of production to make a prima facie

showing that Gaggero cannot establish one or more elements of his causes of action.[3]

Yura's first alleged fact, that Gaggero "has failed to proffer evidence" of his financial ability to purchase the 938 property at all relevant times, does not establish that Gaggero does not possess, and cannot reasonably obtain, such evidence. Yura's showing draws the court's attention to an absence of evidence to support Gaggero's claims, but the Supreme Court in *Aguilar* held that pointing out the absence of evidence to support a plaintiff's claim is insufficient to meet the moving defendant's initial burden of production. The defendant must also produce evidence that the plaintiff cannot reasonably obtain evidence to support his or her claim. (*Aguilar, supra*, 25 Cal.4th at p. 855, fn. 23 [disapproving case law "purportedly allowing a defendant moving for summary judgment simply to 'point[]' out 'an *absence of evidence* to support' an element of the plaintiff's cause of action"].)

Yura's second allegation of fact, that Gaggero refused to testify at his deposition about his financial ability to purchase the 938 property, is also insufficient to satisfy her burden of production. At deposition, Gaggero's attorney objected to questions about his financial condition on privacy grounds and instructed Gaggero not to answer; Gaggero did not answer. Gaggero's objection does not appear to have been well-taken, for Gaggero may not refuse to divulge this specific financial information after putting his ability to purchase the 938 property directly at issue by the allegations in his complaint. (See, e.g., *Harris v. Superior Court* (1992) 3 Cal.App.4th 661, 665 [4 Cal.Rptr.2d 564] ["The proponent of discovery of constitutionally protected material has the burden of making a threshold showing that the evidence sought is 'directly relevant' to the claim or defense"]; *Britt v. Superior Court* (1978) 20 Cal.3d 844, 859 [143 Cal.Rptr. 695, 574 P.2d 766] ["When such associational activities are *directly relevant* to the plaintiff's claim, and disclosure of the plaintiff's affiliations is essential to the fair resolution of the lawsuit, a trial court may properly compel such disclosure," but defendant is not entitled to discover private information when "plaintiffs' complaints do not relate to, nor put in issue, any aspect of their private associational conduct"].)

Yura's showing that Gaggero unjustifiably refused to respond to questions at his deposition does not satisfy the burden of production requirement established by *Aguilar*. Yura did not "present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through

---

[3]Although the parties presented additional evidence in conjunction with Gaggero's motion for reconsideration, this evidence is not relevant to our review of the initial grant of summary judgment and therefore is not discussed or considered here.

admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing." (*Aguilar, supra,* 25 Cal.4th at p. 855.) She presented evidence that Gaggero interposed an objection and refused to respond to a question at deposition, incorrectly asserting that financial ability to perform was not an element of his causes of action. Yura did not move to compel a further response. Her counsel stated, "There is no reason in the world that I [would] go file a motion to compel answers." Had Yura obtained an order compelling Gaggero to respond to questions regarding his financial ability to perform under the Purchase Agreement, and had Gaggero then responded to the questions by admitting he had no evidence to support this element of his claims, then Yura would have been able to satisfy her burden of submitting evidence that Gaggero could not establish this element of his claim. (*Ibid.* [moving defendant may satisfy burden by submitting "admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing"]; see also *Hagen v. Hickenbottom* (1995) 41 Cal.App.4th 168, 187 [48 Cal.Rptr.2d 197] [defendant moving for summary judgment has not satisfied threshold burden where she "did not appear to attempt to negate these foundational facts or to show that the foundational facts could not be established. And [defendant] . . . for whatever reason apparently did not employ discovery tactics—such as legitimately founded state-all-facts interrogatories—more likely in these circumstances to lead to a well-founded conclusion that the [plaintiffs] could not establish their case"].) If Gaggero continued to refuse to answer the questions, sanctions— including issue, evidence, or terminating sanctions—could have been imposed against him. (Code Civ. Proc., § 2025, subd. (*o*).)

Yura argues that Gaggero's privacy objection should be treated as the equivalent of the factually devoid interrogatory response in *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573 [37 Cal.Rptr.2d 653], thereby shifting the burden from Yura to Gaggero on this basis. In *Union Bank,* in response to an interrogatory requesting all facts that would support a particular element of a claim, the plaintiffs stated that they "believed" that a certain series of events occurred. (*Id.* at p. 578.) This court held that such a response satisfied the defendant's initial burden of establishing that the plaintiffs could not establish an element of their claim. (*Id.* at pp. 590, 592-593.) This case differs significantly from *Union Bank.* When the plaintiffs in *Union Bank* stated mere *beliefs* in response to a question requesting *all facts* supporting an element of their claims, the logical inference was that after discovery they possessed no facts to support that element. (*Id.* at pp. 592-593.) Here, however, no such logical inference of an absence of facts can be drawn from an objection on privacy grounds—even though it was not a proper objection. All we may deduce is that plaintiff erroneously believed that the information sought was protected by his right to privacy—not that

he either possessed or did not possess such information. ■ For summary judgment purposes, a deposition objection and instruction not to answer are not the equivalent of a factually devoid response, and therefore cannot be used to shift the burden from the moving defendant to the plaintiff under Code of Civil Procedure section 437c, subdivision (p)(2).

■ Because Yura neither presented evidence making a prima facie case that Gaggero did not possess, and reasonably could not obtain, evidence of his financial ability to perform under the Purchase Agreement, nor evidence conclusively negating this element, Yura failed to meet her burden of production and the grant of summary judgment on this basis cannot stand.

III. *Yura is not entitled to summary judgment on her alternative grounds.*

Yura contends, alternatively, that even if the summary judgment cannot be sustained on the issue of Gaggero's failure to demonstrate his financial ability to purchase the 938 property, the two additional grounds on which she moved for summary judgment in the trial court provide an alternative basis for this court to uphold the award of summary judgment. Although Yura presented sufficient evidence to satisfy her burden of persuasion for summary judgment with respect to each issue, Gaggero, in turn, submitted sufficient admissible evidence to establish that a triable issue of material fact existed as to each issue, thereby precluding summary judgment. (Code Civ. Proc., § 437c, subd. (c).)

A. *Yura is not entitled to summary judgment on the ground that Gaggero had not yet decided whether to purchase the 938 property.*

Yura sought summary judgment on the ground that Gaggero could not establish the elements of readiness and willingness to perform under the Purchase Agreement because of evidence that he had not decided whether to purchase the 938 property. This evidence was sufficient to shift the burden to Gaggero. (Code Civ. Proc., § 437c, subd. (p)(2).) In opposition to the summary judgment motion, Gaggero submitted testimony that with respect to ownership of the 938 property, the only question he had not resolved was *how* to take title to the property—not *whether* to take such title. Gaggero declared that he was ready to perform under the Purchase Agreement but that the capacity in which he would take title to the 938 property was to be determined by his attorneys for tax reasons once the escrow closing date was set. This evidence is sufficient to establish the existence of a triable issue of material fact with respect to his readiness and willingness to perform under the Purchase Agreement by purchasing the 938 property. (Code Civ. Proc., § 437c, subd. (p)(2).) Accordingly, the summary judgment cannot be affirmed on this ground. (Code Civ. Proc., § 437c, subd. (c).)

B. *Yura is not entitled to summary judgment on the basis of the statute of frauds.*

Yura argues that the summary judgment should be affirmed because there exists no written memorialization of an agreement between the parties as to the CC&R's contemplated by the Purchase Agreement, and therefore the statute of frauds (Civ. Code, § 1624, subd. (a)(3); Code Civ. Proc., § 1971) bars the enforcement of the Purchase Agreement.

This argument conflates the Purchase Agreement and the CC&R's. Yura is correct that as general propositions, CC&R's are subject to the statute of frauds and must be in writing in order to be enforceable, and parol evidence is not admissible to establish the terms of an agreement subject to the statute of frauds. (*Triangle Ranch, Inc. v. Union Oil Co.* (1955) 135 Cal.App.2d 428, 438-439 [287 P.2d 537]; Civ. Code, § 1624, subd. (a); *Ellis v. Klaff* (1950) 96 Cal.App.2d 471, 477 [216 P.2d 15].) Whether the CC&R's satisfy the statute of frauds, however, is not the pertinent question here, for Gaggero has sued to enforce the Purchase Agreement and to compel the recordation of the CC&R's to which he claims the parties agreed—not to enforce the CC&R's. The Purchase Agreement satisfies the requirements of the statute of frauds. "The only elements of the contract required by the statute to be written are the seller, the buyer, the price to be paid, the time and manner of payment, and the property to be transferred, describing it so it may be identified." (*Wolf v. Price* (1966) 244 Cal.App.2d 165, 172 [52 Cal.Rptr. 889]; *Larwin-Southern California, Inc. v. JGB Investment Co.* (1979) 101 Cal.App.3d 626, 641 [162 Cal.Rptr. 52].) Because each of these terms is in writing in the Purchase Agreement, the Purchase Agreement fulfills the requirements of the statute of frauds.

Yura nonetheless contends that because CC&R's are subject to the requirements of the statute of frauds in order to be enforceable, there can be no specific enforcement of the Purchase Agreement absent a written agreement to the CC&R's that satisfies the statute of frauds. Yura offers no authority for this proposition. There is no requirement in either the statute of frauds or in the Purchase Agreement that the parties had to agree in writing on the terms of the CC&R's in order to proceed with the real estate transaction. The Purchase Agreement simply states that "[i]t is a condition of Close of Escrow that Buyer and Seller agree to the identical terms, conditions and provisions of the CC&R's to be recorded on this Property and on the Adjacent Properties." The Purchase Agreement does not specify that the parties' agreement to the CC&R's must be written, and there is no basis on which to imply such a requirement.

The Purchase Agreement does reflect the parties' understanding that the CC&R's would be recorded against the properties prior to the close of

escrow on the 938 Property. This would necessitate that the agreed-upon CC&R's eventually be reduced to writing, for the Purchase Agreement states, "It is understood that Stephen M. Gaggero ('Stephen') shall be occupying the Property after Acceptance of the Purchase Agreement and Addendum as a Licensee during the period of time when Buyer and Seller attempt to negotiate the terms, conditions and provisions of the *conditions, covenants and restrictions* ('CC&R's') *to be recorded against the Property prior to the Close of Escrow for this Property.*" (Italics added.) Nevertheless, it is the Purchase Agreement that must be in writing to satisfy the statute of frauds, not documents or agreements required by the Purchase Agreement to be executed.

Other decisions support the proposition that a contract requiring an approval or agreement subject to the statute of frauds may be enforceable irrespective of the status of that agreement or approval. (See *Mid-Continent Telephone Corp. v. Home Telephone Co.* (N.D.Miss. 1970) 319 F.Supp. 1176, 1184, 1187, 1195-1196; *RIV VIL, Inc. v. Tucker* (N.D.Ill. 1997) 979 F.Supp. 645, 659; *Sams v. Feldman* (1955) 342 Mich. 10 [68 N.W.2d 780, 781-782]; see also *Ripani v. Liberty Loan Corp.* (1979) 95 Cal.App.3d 603, 609-610 [157 Cal.Rptr. 272] [written lease contract provided an option to renew the lease; the exercises of the lease extension option did not have to be in writing to satisfy the statute of frauds because the written lease satisfied the statute of frauds].)

In opposition to the summary judgment, Gaggero did not use parol evidence to establish the terms of the CC&R's or to vary the terms of the written agreement between the parties—he attempted to prove that orally and through a series of writings, the parties agreed to "the identical terms, conditions and provisions of the CC&R's" that he attached to his complaint, thereby satisfying the Purchase Agreement's condition precedent to the close of escrow and entitling him to specific performance of the Purchase Agreement.[4] Gaggero submitted evidence that Harris sent him proposed written CC&R's that were consistent with their agreement, and that after some negotiations Gaggero accepted the CC&R's with a letter to Harris stating, "We agree to abide by your requests." Gaggero contends that this evidence is sufficient to establish the necessary agreement to the CC&R's. Although there is a question as to whether the parties did agree to the written CC&R's attached to the complaint, this is a factual question to be resolved at trial. Accordingly, in opposition to the motion for summary judgment, Gaggero established a triable issue of material fact as to whether he and Harris had agreed to the CC&R's. Whether or not they complied with the statute of

---

[4]It is Gaggero's position that if he establishes an agreement on the CC&R's he is entitled to an order compelling their recordation.

frauds does not preclude enforcement of the Purchase Agreement. Thus, summary judgment is not appropriate on the statute of frauds ground. (Code Civ. Proc., § 437c, subd. (p)(2).)

## DISPOSITION

The judgment is reversed. Plaintiff shall recover his costs on appeal.

Grignon, Acting P. J., and Armstrong, J., concurred.